**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants.

Case No. _______

**DECLARATION OF ZOE CAREY**

I, Zoe Carey, declare as follows:

1. I am the Director of the Higher Education Department for the Plaintiff International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America, AFL-CIO (UAW). In that capacity, I coordinate the UAW's activities in the higher education sector. My duties include assisting with collective bargaining and organizing; conducting training for UAW staff, local unions, and members; overseeing other staff in the Higher Education Department; identifying issues that will impact our higher education members; and generally serving as a resource for the UAW's leadership and staff concerning higher education issues.

2. The UAW is an unincorporated labor organization that represents over 400,000 active members and almost 600,000 retired members across the United States, Canada, and Puerto Rico. Among our members are approximately 120,000 workers in higher education—graduate students, postdoctoral scholars, researchers, faculty and university staff—at institutions across the country, including Columbia University, Cornell University, Harvard University, New York University, Johns Hopkins University, the New School, University of California, University of

Connecticut, University of Massachusetts, University of Pennsylvania, University of Washington, University of Southern California, University of Alaska, University of Maine, Weill Cornell Graduate School of Medical Sciences, Icahn School of Medicine at Mount Sinai, and many others.

3. The UAW is committed to protecting the employment, employment opportunities and economic security of all its members. The UAW achieves that purpose through organizing and collective bargaining but also through political action and litigation. The UAW Constitution states that the Union must "play an active role at all levels of government to protect the lives and rights of its members and their families."

4. It is core to the mission of the UAW to protect its members' ability to work lawfully in the U.S. and to protect members' job security, permit them to advance in their careers, and allow them to contribute to the greatest extent possible to the economy of the U.S. and the health and welfare of residents of the U.S. and other nations. We further that mission by providing a variety of resources for international scholar members related to immigration, advocating for employers to provide rights and benefits for international workers, and engaging in litigation against policies that harm our international worker members. Some of our work in this area is highlighted on our website at https://uaw.org/highereducation/international-workers

5. The UAW represents over 120,000 workers who work in various occupations in institutions of higher education in the U.S. and thus has a vital interest in those institutions being able to hire and retain the most outstanding and most qualified researchers and scholars in the world so that the institutions thrive and expand and continue to be outstanding workplaces.

6. I am familiar with the Department of Homeland Security's rulemaking *Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media* (the "Final

Rule"). I understand that, among other things, the Final Rule eliminates the "duration of status" admission period for F and J nonimmigrants and replaces it with admission for a fixed time period based on their length of program, not to exceed 4 years absent an extension approved by immigration officials.

7. Many UAW members hold academic and research positions in the United States through temporary nonimmigrant programs, including the F-1 and J-1 programs. These members are directly impacted by the Final Rule, which meaningfully alters the nature of their nonimmigrant status. Among other injuries, the Final Rule will require all F and J nonimmigrants to file an Extension of Stay (EOS) request with USCIS any time their program end date changes, and in no event longer than four years. Additionally, for graduate students, the Final Rule significantly inhibits academic mobility by prohibiting graduate students from changing programs, schools, or academic focus or matriculating into a program with the same or lower academic level as the one they have completed. And for F-1 students, the Final Rule reduces the grace period at the conclusion of the program from 60 days down to 30.

8. The UAW is also aware of several individual members for whom the harms of the Final Rule are particularly distinct. For example, UAW Member A is from Turkey. He is beginning the second year of a Ph.D. program at a university in New York. UAW Member A's I-20 has a program end date of May 31, 2030, but most Ph.D. students at UAW Member A's university and in his program take longer than five years to complete their program, typically between six and eight years. Funding for Ph.D. students at UAW Member A's university is comparatively lower than at other schools, and most students must work on campus in order to support themselves, which, in turn, lengthens the amount of time that it takes students at UAW Member A's university to graduate. UAW Member A does not know anyone in his program who has completed their Ph.D.

in five years. UAW Member A's area of study is politics, specifically comparing certain political situations in the United States and Turkey. In order to complete his studies, UAW Member A must travel to Turkey to do archival research, at least once per year over the remainder of his Ph.D. program. Without such travel, it would be impossible for UAW Member A to carry out his academic research, continue working with his advisor, or, ultimately, to complete his doctorate. UAW Member A anticipates traveling during the Spring 2027 semester for such academic research. As a result of the Final Rule, when UAW Member A returns to the United States, he will lose the D/S designation on his Form I-94, and it will be changed to the May 31, 2030, program end date on his I-20. However, because UAW Member A does not believe – based on the experience of other students at his university, in his program – that he will be able to complete his Ph.D. by that date, and he anticipates that he will have to apply for EOS in order to remain in the United States to complete his degree.

9. UAW Member B is an Israeli national beginning the third year of a Ph.D. program in a social science field, at a large private university in New York. UAW Member B was admitted to the United States on a J-1 visa with D/S. His program end date on his DS-2019 is May 25, 2031. It is very typical for students in UAW Member B's program to take six to seven years to complete their doctoral studies, particularly students who, like UAW Member B, plan to pursue a career in academia after graduation. UAW Member B plans to travel to Israel in the next year to visit family, and will lose D/S when he returns to the United States. UAW Member B is uncertain whether he will be able to complete his doctorate even by his current program end date, and after traveling and losing D/S he will likely receive an even earlier new date on his Form I-94 due to the Final Rule's four-year limitation. As a result, UAW Member B will have to apply for EOS in order to complete his Ph.D. program. In addition, UAW Member B and his wife – who is with him in the

United States on a J-2 visa – are thinking about starting a family, but the Final Rule and other immigration-related uncertainty have made it difficult for them to plan for their future.

10. UAW Member C is a Chinese national studying at a large private university in New York. She is about to begin the third year of a Ph.D. program in East Asian studies, with a focus on modern literature and critical theory. UAW Member C is on an F-1 visa. The program end date on her Form I-20 is in May 2031. Students in UAW Member C's program typically take longer than seven years to complete their doctorate, and UAW Member C anticipates that it will take her eight to nine years to complete her studies. Because of that, UAW Member C is attempting to extend the program end date on her I-20 to May 2033, but that extension has not yet been approved. UAW Member C has plans to travel to China to visit family in August 2027, and due to the Final Rule she will lose the duration of status designation on her Form I-94 and will be given a new date-certain that will be earlier than her anticipated graduation date, requiring her to file for an EOS. In addition, UAW Member C may want to apply for OPT after graduation, and the Final Rule's reduction of the grace period from 60 to 30 days would make that process more difficult.

11. UAW Member D is from India. She is about to begin her third year in a chemistry Ph.D. program at a large research university in California. Her research involves semiconductors for solar cell applications and other new technology. UAW Member D also obtained her undergraduate degree, in chemistry, at a large public university in the United States. UAW Member D was admitted to the United States on an F-1 visa with duration of status on her Form I-94. Her Form I-20 has a program end date of May 31, 2030, however, she is uncertain that she will complete her doctorate by that date. Many students in UAW Member D's program take seven years to complete their Ph.D., especially as funding for scientific research has lessened, causing students to take on extra teaching assignments to support themselves. UAW Member D is also very

concerned about rushing her degree at the expense of the important scientific research that she performs. UAW Member D has elderly and ailing grandparents in India, and because of Final Rule, she is concerned about having to choose between traveling to India for a family emergency and staying in the United States to keep her duration of status and 60-day grace period. UAW Member D is already planning to forego academic opportunities that would involve travel outside of the United States, due to the Final Rule and other immigration-related uncertainties. For example, many people in UAW Member D's program do summer programs in the United Kingdom and Italy, but UAW Member D is not applying for these programs in order to preserve her current status. In addition to wanting to preserve duration of status due to uncertainty with how long it will take to complete her Ph.D., UAW Member D is also thinking about applying for OPT or STEM-OPT post-graduation, and would like to preserve the 60-day grace period to allow for flexibility with future plans.

12. UAW Member E is about to begin the third year of an English Ph.D. program at a university in California. They are from Vietnam, and on an F-1 visa. Most students in UAW Member E's program take between six and seven years to complete their Ph.D. When UAW Member E was admitted to their Ph.D. program, they were guaranteed funding from their university for six years, which will take them through the end of the 2029-2030 academic year, but the program end date in their Form I-20 is June 2029. UAW Member E would like to travel outside of the United States in the next year, to international conferences in Canada and the United Kingdom. Attending these conferences would be very beneficial to UAW Member E's academic career and scholarship. In addition, UAW Member E's elderly parents live in Vietnam and are unable to travel internationally, and UAW Member E would like to be able to visit their family after the Final Rule takes effect. UAW Member E may forego these professional opportunities and family visits to preserve

their duration of status, rather than face the uncertainty of seeking an extension of stay. UAW Member E is also concerned about the loss of the 60-day grace period. They are planning for a long-term career in academia, but the job market has been difficult, and they anticipate that they will need time after graduation to travel for interviews and job talks. The prospect of potentially having to make an international move or pivot to another immigration status with a shorter grace period, while balancing professional obligations, would be very difficult for UAW Member E.

13. UAW Member F is a Ghanian national and permanent resident of New Zealand. He is an Entomologist and postdoctoral scholar at the department of environmental sciences at a large research university in California. UAW Member F is researching methods of controlling fruit flies that negatively impact America's horticultural produce, to ensure safe domestic consumption and export to other countries without rejection. He is on a J-1 visa. UAW Member F has a two-year contract, and the end of program date in his DS-2019 is November 30, 2026. At the beginning of his postdoc, UAW Member F was told that his position could be extended for up to five years, and he is currently waiting to hear if he will be extended for an additional contract. UAW Member F expects that he will be extended for another contract, as his principal investigator has indicated that he is pleased with UAW Member F's research. However, UAW Member F is not assured that his contract will be extended prior to Final Rule taking effect on September 15, 2026, in which case he will lose the duration of status designation in his Form I-94, and will have to apply for an EOS in order to continue his postdoc and his research.

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on August 17, 2026, at Brooklyn, New York.

____________________________

Zoe Carey