**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, *et al.,*

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants.

Case No. _______

**DECLARATION OF JULIE SCHMID**

I, Julie Schmid, declare as follows:

1. I serve as the Director of Higher Education at the American Federation of Teachers (AFT), one of the plaintiffs in this lawsuit. In this capacity, I lead the Higher Education department, which oversees AFT's initiatives addressing issues that impact our members in higher education.

2. I have personal knowledge of the contents of this declaration and/or have knowledge of the matter based on records available to me. If called as a witness, I could and would testify competently to the following facts.

3. I am familiar with the Department of Homeland Security's rulemaking *Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media* (the "Final Rule"). I understand that, among other things, the Final Rule eliminates the "duration of status" admission period for F and J nonimmigrants and replaces it with admission for a fixed time period

based on their length of program, not to exceed 4 years absent an extension approved by immigration officials.

4. AFT is a national labor union that was founded in Chicago, with eight locals signing on as AFL President Samuel Gompers welcomed the union into its fold in 1916. It grew quickly and now comprises almost 3,500 local unions and over 1.8 million members who work in every U.S. state, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands. AFT is now headquartered in Washington, D.C.

5. Five divisions within the AFT represent the broad spectrum of AFT's membership: pre-K through 12th-grade teachers; paraprofessionals and other school-related personnel; higher education faculty and professional staff; federal state and local government employees; and nurses and other healthcare professionals.

6. The AFT's mission is to champion fairness, democracy, and economic opportunity in and through high-quality public education, as well as healthcare and public services for students, their families, and communities their members serve. The AFT does so by ensuring its members receive fair pay and benefits for their crucial work, by fighting for safe working conditions that also benefit students, patients and all those who use public services, by providing professional development and resources to member educators to improve student achievement, and by fighting for civil rights.

7. AFT members occupy a broad range of positions in education, including but not limited to: pre-K through 12th-grade teachers, early childhood educators, classroom aides, counselors, school nurses, paraprofessionals, and other school-related personnel; higher education faculty, graduate student workers, postdoctoral researchers, and professional staff at community colleges, colleges and universities.

8. AFT is the largest higher education union in the United States, with over 370 union locals and 200,000 members at colleges and university campuses. Higher education members of AFT include faculty, staff, and graduate student workers. Several AFT locals—including the Graduate Labor Organization at Brown University—are dedicated to representing the interests of graduate students on university campuses.

9. AFT counts among its higher education members thousands of international graduate students and postdoctoral researchers with F-1 or J-1 nonimmigrant status. All of these graduate student and postdoctoral researcher members are concretely impacted by the Final Rule, which meaningfully alters the nature of their nonimmigrant status. Among other injuries, the Final Rule will require all F and J nonimmigrants to file an Extension of Stay (EOS) request with USCIS any time their program end date changes, and in no event longer than four years.

10. The burdens imposed by this new filing requirement are substantial. Each extension application requires a minimum of $420 in filing fees. For graduate students, who are typically compensated at stipend levels well below the median national wage, these costs represent a meaningful financial burden, one that recurs each time an extension is required. USCIS currently estimates that processing of extension requests for F and J visa holders takes approximately 5 months, during which time applicants face uncertainty about their continued authorization to remain in the United States and to maintain employment. Applicants who cannot tolerate this processing delay must pay a premium processing fee of $1,965. The severity of this processing burden is compounded by the fact that USCIS is currently managing a record backlog of approximately 11.3 million pending cases, raising the likelihood that standard processing times will lengthen further.

11. These financial harms are not hypothetical. AFT's affiliate, the Coalition of Graduate Employees, AFT Local 6069, is the exclusive bargaining representative for graduate employees at Oregon State University. Local 6069 has negotiated provisions in its collective bargaining agreement requiring the University to reimburse Student and Exchange Visitor Information System ("SEVIS") fees for graduate employees on F-1 visas, precisely because these fees impose a recognized financial hardship on members earning graduate-level stipends. The Final Rule will increase both the frequency and the aggregate cost of immigration-related fees borne by these members and, where reimbursement provisions apply, by their university employers. This additional cost pressure directly implicates the terms and conditions of employment that AFT and its locals negotiate and administer on their members' behalf.

12. The Final Rule inflicts additional harms beyond the extension-filing burden. For graduate students, the Final Rule significantly inhibits academic mobility by prohibiting graduate students from changing programs, schools, or academic focus or matriculating into a program with the same or lower academic level as the one they have completed. Graduate education frequently involves changes in research focus, transfers between institutions, and progression from one degree to another. The Final Rule's restrictions on these routine academic transitions will force AFT's graduate student members to choose between forgoing legitimate academic opportunities and jeopardizing their immigration status.

13. And for F-1 students, the Final Rule reduces the grace period at the conclusion of the program from 60 days down to 30. This grace period is the window within which students may remain in the United States after completing their program to attend to personal affairs, attend academic conferences, prepare for departure, or transition to a new immigration status. Many academic conferences in fields where AFT members work are held during summer months at or near

program end dates. The shortened grace period will curtail AFT members' ability to participate in these conferences, limiting their professional development and diminishing their competitiveness in the academic labor market.

14. AFT is also aware of several individual members for whom the harms of the Final Rule are particularly distinct.

15. One such member is currently on an F-1 visa and is entering the second year of a doctoral program in computer networks. Based on the typical trajectory for doctoral programs in this field, this member's program will likely require an additional five to six years to complete.

16. Under the Final Rule's four-year admission cap, this member will be required to file an extension application approximately four years into his program in order to remain in the United States and complete their degree. Each application will require payment of filing and biometrics fees and will subject this member to a period of processing uncertainty during which their continued ability to remain in the country, maintain employment, and pursue their research will be in doubt. There is no guarantee that an extension will be approved, and a denial or significant processing delay could force this member to abandon a doctoral program in which they have invested years of study and research.

17. This member's academic field regularly holds conferences during the summer months, and they plan to rely on the grace period to attend those conferences at the end of their program's term. Under the Final Rule's reduction of the grace period from 60 days to 30 days, this member's ability to attend end-of-program conferences will be materially limited, restricting opportunities for professional networking and dissemination of research that are important to career advancement in this member's field.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on August 17, 2026 in Washington, D.C.

Julie Schmid
Julie Schmid (Aug 17, 2026 13:30:24 EDT)

JULIE SCHMID