**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,

Defendants.

Case No. _______

**DECLARATION OF JOHN SCHLEUSS**

I, John Schleuss, declare as follows:

1. My name is Jon Schleuss. I have served as President of The NewsGuild-Communications Workers of America (TNG-CWA or the Guild) since 2019.

2. The Guild is the largest union in the United States representing media workers. TNG-CWA has 46 local unions in the United States, and also has locals in Canada. TNG-CWA represents the interests of about 28,000 members and was founded in 1933.

3. TNG-CWA's constitution provides that: The purpose of the Guild shall be to advance the economic interests and to improve the working conditions of its members; to guarantee, as far as it is able, equal employment and advancement opportunity in the industry and constant honesty in news, editorials, advertising, and business practices; to raise the standards of journalism and ethics of the industry; to foster friendly cooperation with all other workers; and to promote industrial unionism in the jurisdiction of the Guild.

4. TNG-CWA's members are journalists and other communications professionals working at newspapers, online publications, magazines, news services and in broadcast in the U.S.,

Canada and Puerto Rico, including foreign media outlets. Among other things, they hold positions as reporters, columnists, copy editors, photojournalists, videographers, podcast producers, directors, graphic designers and editorial cartoonists.

5. TNG-CWA has the history, mission, resources, experience and commitment to advance the fight for dignity and respect on the job along with job security, good pay and benefits. In addition, it advocates for journalists and high-quality journalism and promotes the welfare of its members by keeping abreast of all government programs and regulations that have an impact on their ability to exercise their First Amendment right to report.

6. TNG-CWA has many affiliated local unions that serve as the collective bargaining representatives of bargaining unit employees of various foreign media outlets. Any member of those Guild locals is a member of the Guild. Those Guild locals have a statutory obligation to fairly represent the workers in Guild bargaining units and to bargain in good faith with the foreign media outlets regarding terms and conditions of employment. Guild locals represent numerous foreign journalists employed by foreign media outlets who are currently on I Visas, and thus are impacted by the Final Rule terminating the indefinite Duration of Status (D/S) and replacing it with a fixed admission term of 240 days. Some Guild locals have negotiated directly on terms of employment relating to the immigration status of the foreign reporters they represent, including provisions in collective bargaining agreements requiring legal or financial assistance on visa renewal.

7. The Guild has at least three impacted locals that represent journalists at various foreign media outlets including Reuters, EFE News Service and Agence France-Press. Those locals have identified more than 55 foreign journalists working across the United States on I Visas, all of whom are directly impacted, professionally and personally, by the Final Rule.

8. The majority of the I Visa holders represented by the Guild have lived and worked

in this country for many years– some for as long as 15 years or more – under the I Visa D/S. Many gave up their professional jobs, homes and personal lives in other countries on the expectation of long term job security in the United States under the D/S I Visa rule, and under the job security terms of Guild collective bargaining agreements. On that expectation, many have signed long term leases on homes or apartments that extend well beyond the 240-day term imposed by the Final Rule. Many own cars in the United States. Many of the I Visa holders have spouses or partners who reside with them in the United States, and who have themselves uprooted their lives in other countries. Many have children including some who themselves are US citizens, and who attend school here in the United States.

9. One Guild reporter married their spouse here in the United States, but because each is a citizen of a different country, there is no country where it would be guaranteed that they could live together as a married couple, were the I Visa status of the foreign journalist not to be renewed.

10. Given the 240-day fixed renewal term, the I Visa Final Rule has introduced great uncertainty and intolerable risk into the personal and professional lives of these reporters and their families. These visa holders have made their professional and personal lives here in the United States and the Final Rule has turned their lives upside down. Beyond the time and expense of recurrent extension applications under the Final Rule, the termination of the D/S means that foreign reporters whose requests for extension are ultimately denied would be forced to immediately terminate their long term employment in the United States and uproot their lives in this country on a moment's notice.

11. I am aware of I Visa holders represented by the Guild who report on partisan politics, immigration issues, and high-profile disputes involving the current administration. Some are reporters based in Washington DC whose news assignments include reporting on the day-to-day

actions of the Trump Administration, the legal battles challenging those actions, and the partisan critics of those actions. Others have written news stories featuring the voices of news subjects who are highly critical of the current administration's immigration policies, including ICE raids, violent actions undertaken by ICE, the death of ICE protestors, and the prosecutions of the agents involved. Other visa holders have reported on trans rights and human rights issues including families seeking asylum from violence and political repression in other countries. Yet others have reported on high profile disputes between the current administration and universities regarding campus protests, university policies and threats to federal grant funding. Other reporters have covered the administration's attempts to deport high profile student protesters and the legal battles that have ensued. All of this politically sensitive news content may be scrutinized in the Final Rule visa renewal process, on a recurrent, 240-day application cycle.

12. Although these reporters work for foreign media outlets, US-based news outlets subscribe to the outlets' "news service" and publish their news content. Thus, many of the news stories reported on by I Visa holders not only serve a global audience, but are also published in the U.S. and are read by an audience based in the United States.

13. These reporters have a real and credible fear of retaliation in the I Visa renewal process, based on the exercise of their First Amendment right to report truthfully and candidly about the actions of the current administration and the affairs of the world at large. That the Final Rule expressly references a content-based review of the Visa-holder's published news content as part of the renewal application process makes clear the risk posed to the First Amendment right to report. One visa holder already has been unfairly accused by government officials of "doxing", due to their reporting on the criminal prosecution of an ICE agent charged with the death of an ICE protester. Several reporters have mentioned that the fear and uncertainty generated by the

Final Rule may give them or their colleagues pause on how they report on high profile or politically sensitive news stories. There is a real and credible fear that the Final Rule will have a chilling effect on their First Amendment right to report on all sides of a news story, including those sides that challenge or protest administration actions and policies. Reporters fear that they may "self censor" their news reporting to minimize the risk of content-based retaliation by federal officials in the I Visa renewal process.

14. These reporters also have a real and credible concern that they will lose their employment in the United States, given their I-Visa status. The 240-day visa application renewal required by the Final Rule is flatly incompatible with the ongoing and daily reporting needs of the employing news organizations. Given the unpredictability of the recurrent renewal process, the expected delays in processing, and the constant and ongoing reporting demands of employing news outlets, visa holders reasonably fear that their employers will either terminate their employment and replace them with non-visa holders or will use these circumstances to eliminate their positions entirely.

This statement is true to my personal knowledge and is made under penalty of perjury of the laws of the United States of America.

________________________

Jon Schleuss
President, TNG-CWA

Date: August 16, 2026