**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No. ______________ |

**DECLARATION OF ANGELA V. OLINTO**

**<u>DECLARATION OF ANGELA V. OLINTO</u>**

I, Angela V. Olinto, declare as follows:

1. I am the Provost at the Trustees of Columbia University in the City of New York, commonly known as "Columbia University" or "the University". I have held this role since April of 2024. As Provost, I have tasked my Vice Provost for Campus Integration and my Senior Vice Provost of Academic Initiatives with oversight of the International Students and Scholars Office (ISSO). I have personal knowledge of the contents of this declaration and/or have knowledge of the matter based on records available to me and through information from the Deans of Columbia University's 17 schools and their teams. If called as a witness, I could and would testify competently to the following facts.

2. Columbia University is a member institution of the Presidents' Alliance on Higher Education and Immigration. Columbia University pays annual dues to the Presidents' Alliance on Higher Education and Immigration. Columbia University's President, Jennifer Mnookin, is the University's representative on the Alliance.

3. I am familiar with the Department of Homeland Security's (DHS) rulemaking *Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media* (the "Final Rule"). I understand that, among other things, the Final Rule eliminates the "duration of status" admission period for F and J nonimmigrants and replaces it with admission for a fixed time period based on their length of program, not to exceed four years absent an extension approved by immigration officials.

**A. Background**

4. Columbia University is one of the world's most important centers of research and

at the same time a distinctive and distinguished learning environment for undergraduates and graduate students in many scholarly and professional fields. Columbia University recognizes the importance of its location in New York City and seeks to link its research and teaching to the vast resources of a great metropolis. It seeks to attract a diverse faculty, staff, and student body, to support research and teaching on global issues, and to create academic relationships with many countries and regions. It expects all areas of Columbia University to advance knowledge and learning at the highest level and to convey the products of its efforts to the United States and the world. With its 17 schools spread over multiple campuses located in and around New York City, Columbia University understands its regional, national, and global impact and works to draw the top global talent in all fields.

5. During the 2025-2026 academic year, Columbia University hosted 13,729 international students. Of the total, approximately 12,935 were in F-1 status, including 1,786 enrolled in undergraduate programs and 10,936 in graduate programs (of which 970 were in doctoral programs. In addition, during 2024-25, Columbia University hosted 3,130 international faculty and researchers.

6. F-1 students follow many academic paths at Columbia University. For example, while many undergraduates enroll in four-year degree programs and complete their degrees in four years, a number of students take more than four years to graduate.

7. During the 2025-2026 academic year, approximately 2,119 J-1 exchange visitors are affiliated with Columbia University including 320 international students, 773 postdoctoral fellows, 37 visiting professors, 101 other Officers of Instruction, 191 Officers of Research, and 697 Visiting Scholars or Scientists.

8. Columbia University expects that many of its J-1 exchange visitors will be affiliated

with the institution for longer than four years. For example, Columbia University invites international scholars annually for the purpose of conducting research, lecturing, and clinical observation. Similarly, even where a J-1 exchange visitor may not be affiliated with Columbia University for longer than four years, it is often necessary to adjust their anticipated program end date reported on their DS 2019. Our visiting scholars and researchers experience changes in the timing of their visits as their research evolves. It is a regular practice for our international researchers to update their research proposals with work that will necessitate extended stays.

9. Our international students, faculty, and researchers contribute to Columbia University and to our nation in countless ways; the energy, creativity, innovation, and dedication they bring to advancing academic excellence and scholarship are a vital part of the fabric of our Columbia University community.

10. Columbia University devotes significant time and resources to ensuring compliance with all applicable immigration laws. ISSO currently consists of approximately 45 professionals, including 36 Designated School Officials, whose job duties consist of assisting international students and reporting required information via the Student and Exchange Visitor Information System.

11. As detailed below, the announcement of the Final Rule has inflicted—and will continue to inflict—serious harm on Columbia University.

**B. Disruptions to academic programs**

12. The four-year status cap set by the Final Rule does not reflect academic realities at Columbia University, where programs frequently take longer than four years to complete—in many cases as a matter of design.

13. The elimination of "duration of status" creates considerable new uncertainty

regarding the ability of students to complete their course of study at Columbia University. Students are understandably concerned that they may be unable to obtain an extension of stay if needed, which would result in the loss of the years and significant financial resources invested in their United States.-based education.

14. The vast majority of doctoral students at Columbia University's Graduate School of Arts and Sciences (approximately 99%) and doctoral students at Columbia Engineering (approximately 85%) require more than four years to complete their doctoral degrees. The data demonstrates that completion beyond four years is not an exception but the prevailing trajectory for doctoral education at Columbia University. That is how these programs are designed. This trend is similar at other top doctoral programs around the country. The United States, and Columbia University, have benefited in countless ways from international students coming to this country for PhD programs. Many have gone on to become pre-eminent leaders in their fields. The four-year limitation means that potential applicants may decide not to pursue their studies in the United States at all because of the uncertainty of whether they will be able to complete their degrees. Faculty at Columbia University have expressed significant concerns that limiting students' ability to remain in the United States long enough to complete their doctoral degrees, or introducing uncertainty about that ability, could lead highly qualified students to pursue doctoral education abroad. This will weaken the ability of United States universities to compete globally for top talent and to retain individuals who contribute meaningfully to research, innovation, and society. Applying for an extension after four years unnecessarily disrupts a student's progress at a critical time in their studies. After four years, students are in the midst of finalizing the experiments, completing research, and writing their dissertations. With a shorter duration, research quality will suffer, as students may be unable to have the necessary time to build foundational knowledge in multiple

domains or the time for interdisciplinary cutting-edge research.

15. Other aspects of the Final Rule conflict with course design at Columbia University. For example, the Final Rule prohibits undergraduate students from transferring during their first academic year and graduate students from transferring between programs and prohibits students from enrolling in a program at the same or lower level than a program already completed. But these are ordinary sequences at Columbia University for some students, and these students will have their opportunities needlessly constrained. At our School of General Studies in recent years, somewhere between seven and ten international students annually transfer into the school during the first year of their academic program.

16. Graduate students, including international students, also often transfer programs or enroll in one program at the same or lower level than the one they just completed. For example, at Columbia Law School, students with financial sponsorship from certain countries are currently required to complete two consecutive LL.M. degrees in order for the students to be eligible for their funding support. In addition, a number of students who enroll in Columbia University's LL.M or Executive LL.M degree program are pursuing a second Master's degree, which will now be prohibited under the Final Rule without an exception. Columbia Law School's Executive LL.M. program is specifically targeted towards lifelong learners and experienced practitioners. It is common for these individuals to have multiple degrees at the Master's level. It is also sometimes the case that students who pursue an LL.M. subsequently pursue an American J.D. afterwards.

17. As a result of the changes in the Final Rule, Columbia University may be required to make changes to its program offerings and academic pathways. For example, our School of Professional Studies may need to make structural changes to its American Language Program, its Graduate Student Visitor Programs, and its dual degree programs.

18. These changes would be costly and time-consuming to implement and, once implemented, are not easy to unwind. They are thus irreparable harms to Columbia University.

**C. Harms to student success**

19. The Final Rule creates considerable uncertainty for current international students at Columbia University who may take longer than four years and/or their program end date to graduate.

20. Any student who must seek an Extension of Stay (EOS) simply to complete their academic program faces some risk of falling out of status or having to leave the United States before their program is complete. For example, an immigration officer may deny the EOS or the student's application may be untimely or technically deficient. Based on existing processing delays at the Department of Homeland Security, it is substantially certain that students also will encounter considerable delay in filing their EOS requests and having those adjudicated. Moreover, any uncertainty about whether an extension will be granted may disincentivize talented international students from pursuing the degree in the first instance, reducing the potential for our country to import global talent.

21. This enhanced risk profile creates real-world harm that affects academic programs, research progress, and the campus environment. We expect that student retention, productivity, graduation rates, and other markers of student success may suffer because of the Final Rule.

22. Additionally, students faced with this uncertainty may suffer academically. In my experience, students with external stressors or who face an uncertainty or risk often struggle academically because of stress, anxiety, distraction, and drains on time, resources, and attention.

**D. Deterrence of international travel**

23. International travel is a common feature of the educational and academic

experience at Columbia University. Students and scholars—including international students and scholars—frequently travel abroad, for instance to attend conferences, to study abroad, to perform their research duties, and as part of their classroom curriculum.

24. Current F-1 students may be deterred from traveling internationally after the Final Rule, because students who exit the United States and reenter will receive a new Form I-94 upon return, which would move them from "duration of status" to the "fixed-term" system. It would also reduce their grace period at the conclusion of their program from sixty days to thirty days. This shortened period creates particular challenges for our LL.M. students at Columbia Law School who wish to sit for the New York Bar exam in July and may now need to leave the country after graduation in May and apply to return because of the shortened period.

25. These disincentives to travel may cause disruption to travel-based components of the academic experience at Columbia University. Students may not be able to participate in study abroad, to complete travel-based components of their course work and research responsibilities and attend academic and professional development opportunities. These harms to Columbia University's ability to carry out its educational and research mission by ensuring that students and scholars are able to fully participate in academic and research offerings are irreparable—those missed opportunities to provide academic enrichment cannot be recovered in the future.

26. For that reason, Columbia University may need to restructure some of these academic offerings to accommodate international students who now feel unsafe to travel. These lasting changes to programs to accommodate the Final Rule are irreparable.

27. Our Graduate School of Arts & Sciences has heard from students who have now canceled their plans for international research and international travel to conferences due to concerns about the impact of the Final Rule. Several more have already expressed concerns about

committing to future trips. One of these students is supposed to spend part of the fall at a research center in Europe related to his research work. These students have expressed concerns about whether it is advisable to leave the United States and have sought guidance from our International Students and Scholars Office as to whether it would be advisable to proceed with their academic plans. If they are unable to pursue needed research because of the uncertainties or the risk that they will lose their current duration of status and hence not be able to complete their degree, the harm is significant and irreparable.

Executed on August 17, 2026, New York, New York.

Angela V. Olinto
Provost, Columbia University