# EXHIBIT 32

THE OHIO STATE UNIVERSITY

September 26, 2025

**DHS Docket No. ICEB-2025-0001 submitted via http://www.regulations.gov**
**RIN 1653-AA95**

Office of Regulatory Affairs and Policy
U.S. Immigration and Customs Enforcement
Department of Homeland Security
500 12th Street SW
Washington, DC 20536

The Ohio State University appreciates the opportunity to submit comments regarding the above-referenced Notice of Proposed Rulemaking (NPRM). As one of the nation's largest and most comprehensive public research universities, we are committed to full compliance with federal immigration regulations while advancing the academic and research success of our students, scholars, and employees.
In keeping with this commitment, we must express our serious concern that the proposed rule, if implemented in its current form, would significantly hinder our ability to recruit and retain the world's most talented students and researchers. Such restrictions would jeopardize the very innovation and discovery that fuel progress in science, technology, medicine, and other disciplines vital to the prosperity and well-being of the United States.
If adopted, these changes would place the U.S. research enterprise at a significant disadvantage to global competitors, who are aggressively investing in attracting top talent and threatening U.S. leadership in critical areas of research and innovation.
Accordingly, after careful review, we respectfully submit the following concerns and recommendations for your consideration.

**PROPOSED RULE INCOMPATIBLE WITH TIMELINE FOR DEGREE COMPLETION & EXCHANGE VISITOR PROGRAMS**

*Issue:*

- The NPRM would limit the maximum period of stay for F- and J-visa holders to the shorter of (1) the time required to complete their program of study or exchange, or (2) four years. Students or exchange visitors requiring additional time would be required to file an extension of stay with U.S. Citizenship and Immigration Services (USCIS), which would be granted at the agency's discretion.

*Impact to The Ohio State University:*

- A four-year limitation on duration of status fails to reflect the practical realities of academic and professional pathways. If there must be a fixed duration of status, it should be long enough to accommodate a student's or exchange visitor's entire planned program. Many degree programs, particularly engineering degrees, joint degrees, professional degrees,

and Ph.D. programs, routinely require more than four years to complete. Some J-1 exchange visitor programs have a standard 5-year maximum (e.g., Research Scholar), and some J-1 medical residencies take longer than 4 years to complete. The additional burden of filing USCIS-adjudicated extensions will create uncertainty for students, researchers, hospitals, and physicians, increase costs, and exacerbate already significant case backlogs at USCIS.

- During the period of 08/20/2024 - 08/25/2025, Ohio State had a total of 227 J-1 scholars with programs over four years in length. The top three disciplines were:
    - Oncology and Cancer Biology
    - Biomedical Sciences, General
    - Cardiovascular Science

- The total number of student extensions Ohio State processed during the period of 08/20/2024 - 08/25/2025 was 2531 for the following reasons:
    - OPT: 1201
    - STEM OPT: 899
    - J-1 student academic training: 67
    - Change of Level: 54
    - Academic Program Extension beyond the norm: 310

- Total number of J-1 scholar extensions Ohio State processed during the same period was 174, resulting in a total of 2,705 extensions overall.

- Based on this number of extensions, Ohio State would incur an estimated $630,265 in new costs per data cited within the proposed rule that estimates university costs of $233 per extension.

    - The total estimated new costs calculated above do not include the amount of additional training required to ensure full compliance with the proposed rule.

- According to the U.S. National Center for Education Statistics ("NCES"), only 44% of students nationwide complete a bachelor's degree in 4 years.

- At Ohio State, approximately 28% of undergraduate students take longer than 4 years to complete a bachelor's degree.

- At Ohio State, approximately 44% of undergraduate engineering students at Ohio State take longer than 4 years to complete a bachelor's degree.

- At Ohio State, 1689 (Graduate: 944/Undergraduate: 745) international students enrolled in engineering programs. Additional relevant data points to note:
    - The top three international engineering disciplines are in high-demand fields for American employers: Computer Science and Engineering, Electrical and Computer Engineering, and Chemistry.

  - The average time-to-degree for international graduate and PhD students is approximately 5.3 years.

- According to the U.S. National Science Foundation ("NSF"), the median time to complete a Ph.D. program in the United States is 5.7 years.

- Undergraduate student athletes frequently have 5-year programs, including a "red shirt" year.

- Regarding J-1 status for graduate medical education, according to the American Medical Association ("AMA") the following residencies all take 5 years or more to complete: child neurology, diagnostic radiology, orthopedic surgery, otolaryngology-head and neck surgery, radiation oncology, general surgery, urology, vascular surgery, plastic surgery-integrated, interventional radiology, thoracic surgery, and neurological surgery. The J-1 Research Scholar and Professor categories commonly sponsored at universities may last up to 5 years in length.

*Recommendations:*

1. **Maintain I-94 Validity Through Program End Date**: The I-94 admission period should, at a minimum, remain valid through the end date listed on Form I-20 or DS-2019. This would reduce workload for USCIS, and permit students, physicians, and researchers to remain in the United States for the expected duration of their program without unnecessarily driving up costs and disrupting programs – especially medical residency and research programs.

2. **At an absolute minimum I-94 validity should be five years if consistent with the I-20 or DS-2019**: If USCIS determines that it will not admit a student or exchange visitor for the full period of an expected program, at least allowing a five-year admission validity period would be more consistent with many standard program completion time frames, reduce the need for extensions, decrease administrative workload, and support uninterrupted academic progress. Requiring a student or visiting scholar to file for an extension for what in many cases would normally be the last year of study or exchange program activities creates unnecessary workload and inconvenience for all parties involved, especially USCIS.

3. **Preserve Institutional Discretion for Program Changes**: USCIS should not require separate adjudication for program changes that fall within SEVIS reporting requirements and are monitored by Designated School Officials (DSOs). ICE maintains the ability to track and monitor program changes and extensions through SEVIS. Restricting the ability to change programs creates an unnecessary burden on both schools and the government and provides DHS with no new information that DHS cannot already access.

**PROPOSED RULE RESTRICTS EDUCATIONAL & WORKFORCE PATHWAYS**

*Issue:*

- The NPRM would restrict international students' ability to transfer schools, change their educational objectives, or pursue additional education. Undergraduate students would be prohibited from changing programs within their first year except under limited exceptions, and graduate students would be prohibited from changing programs entirely.

*Impact to The Ohio State University:*

- These provisions would significantly limit our international students' academic flexibility and ability to respond to evolving educational and career goals. The proposal rule changes would also complicate Ohio State's ability to effectively advise international students and could delay or prevent students from completing programs. Program changes are already tracked in SEVIS, and all relevant information is available to DHS.

- According to the NCES, approximately 30% of all undergraduate students change their major during their studies.

- Please note the relevant Ohio State data on international student transfers:
  - During the period of 08/20/2024 - 08/25/2025:
    - Total number of students that transferred out was: 464
    - Total number of students that transferred in was: 172
    - Total number of students program updates for change of major: 295
    - Total number of student requests for Reduced Course Load: 349
      - Medical – 33
      - Academic difficulties – 6
      - To complete course of study (last term) – 310

*Recommendations:*

1. **Permit Undergraduate Program Changes**: Undergraduate students should retain the ability to change programs or degree objectives without requiring USCIS adjudication. Undergraduate programs should rarely pose any security or export control risk, and international undergraduate students should be afforded the same opportunity to explore educational opportunities as domestic students.

2. **Permit Graduate Program Changes:** Program changes are trackable by DHS through SEVIS, and security risks can be easily evaluated by DHS. At the very least, DHS should permit program changes in broad categories. There would be little value in, for example, prohibiting a change from a graduate program in economics to a graduate program in business or finance, or a change in the type of engineering degree pursued.

3. **Clarify Degree Level Definitions**: USCIS should provide explicit guidance on what constitutes "same" or "lower" degree levels to prevent confusion.

4. **Support Seamless Transfers**: any final rule should allow students to transfer between institutions and pursue additional degrees without unnecessary delay.

**PROPOSED RULE INCREASES GOVERNMENT INEFFICIENCY**

*Issue:*

- The NPRM would increase reliance on USCIS adjudication for extensions and status changes, shifting discretion away from institutions of higher education and program sponsors.

*Impact to The Ohio State University:*

- The proposed changes in the NPRM would increase filing costs and processing times for students, require universities to hire and train additional staff to manage filings, risk disruption to medical residencies and research programs, and further burden USCIS, which is already managing significant case backlogs.

*Recommendations:*

1. **Maintain Institutional Authority:** Given the effective compliance and efficiency standards already implemented within the current system, The Ohio State University should retain discretion to recommend extensions and program changes within SEVIS.

2. **Minimize Additional USCIS Filings:** DHS should avoid policies that create unnecessary filings and divert agency resources from higher-priority adjudications.

**PROPOSED RULE REDUCES CONSISTENCY IN ADJUDICATIONS**

*Issue:*

- The NPRM appears to revise 8 CFR 214.1(c)(5) to eliminate deference to previous adjudications. This is not a "technical update" as claimed in the preamble but either an error confusing 8 CFR 214.1(c)(7) with 8 CFR 214.1(c)(5) or a radical change in regulations governing adjudication of petitions for extension of status. The language of the proposed regulation does not merely eliminate the reference to Form I-129 but rewrites the entire provision.

*Impact to The Ohio State University:*

- Elimination of the deference policy would create uncertainty in the ability of existing employees in H-1b, O-1, or other nonimmigrant statuses to continue their work in the United States as physicians, teachers, and scientists. This change risks disrupting patient care, class schedules for American students, and major research projects.

*Recommendation:*

**Retain Existing Regulation Concerning Deference To Previous Adjudications:** to ensure predictability and consistency in adjudications, USCIS should retain the existing language of 8 CFR 214.1(c)(5) and, if necessary, only remove only the following words: ". . . filed on Form I-129 . . . "

THE OHIO STATE UNIVERSITY

**CONCLUSION**

The proposed rule, while aimed at standardizing status periods, would impose significant and unnecessary costs on students, universities, and USCIS. The Ohio State University believes that maintaining the current duration of status approach is the best solution and has worked well for decades. However, if USCIS must implement a fixed duration of status, The Ohio State University respectfully urges the federal government to adopt a more flexible approach that:

- Maintains validity through program end date.
- At a very minimum, permits at least five-year admissions on an I-94 consistent with I-20/DS-2019 validity periods.
- Preserves institutional discretion for student and visitor program changes.
- Ensures students can pursue additional educational, athletic or workforce opportunities without disruption.
- Avoids creating large new backlogs at USCIS.
- Retains existing regulatory language concerning deference to prior determinations of eligibility for nonimmigrant status.

The Ohio State University respectfully urges that DHS adopt these recommendations to safeguard the national interest, empower international students, workers, and healthcare professionals who contribute to our economy, and ensure the prudent and efficient stewardship of federal resources.

Sincerely,

DocuSigned by:
Ibrahim Kaya Sahin
D2F59FB17CB044A...

**Kaya Şahin**
Vice Provost for Global Strategies and International Affairs
Professor of History
The Ohio State University

# EXHIBIT 33

An official website of the United States Government.

Back to Document Comments (/document/ICEB-2025-0001-0001/comment?filter=ICEB-2025-0001-3518)

Share

PUBLIC SUBMISSION

# Comment Submitted by Anonymous

Posted by the **Immigration and Customs Enforcement Bureau** on Sep 3, 2025

Docket (/docket/ICEB-2025-0001) / Document (ICEB-2025-0001-0001) (/document/ICEB-2025-0001-0001) / Comment

Comment

To the Department of Homeland Security,
I am writing to express my strong opposition to the proposed rules that would eliminate Duration of Status (D/S) and prohibit F-1 students from changing their major or pursuing studies at different academic levels. While the stated goal of enhancing national security is laudable, these measures are a fundamentally flawed and counterproductive means to that end.
These rules are based on the incorrect premise that the F-1 student visa program is a primary and unique vector for espionage. This is a dangerous oversimplification. True state-sponsored espionage is not limited to a single visa category; it can and does utilize diplomatic visas, B-2 tourist visas, and other channels that fall outside the scope of this rule. By focusing so heavily on the F-1 population, DHS is creating a burdensome system that acts as security theater while failing to address the broader, more subtle nature of the threat.
The most damaging consequence of this rule will be that it backfires. The United States' greatest strategic asset is its image as a land of opportunity, attracting the world's brightest minds who not only want to study here, but who admire this country's ideals and wish to stay, innovate, and contribute as future Americans. This proposal sends a clear message that they are no longer welcome. The uncertainty created by eliminating D/S and the rigid restrictions on academic exploration will deter this top-tier talent, who will simply choose to build their futures—and our competitor's economies—in more welcoming nations like Canada or Australia. We will be losing the very people who are most inclined to become loyal, productive members of American society.
Instead of these damaging, overly broad measures, I propose a smarter, risk-based approach that truly enhances security without sacrificing our national competitiveness:
* Strengthen Counterintelligence Across All Visa Categories: Shift resources from broad F-1 administrative burdens to targeted counterintelligence operations that can detect and neutralize threats regardless of the visa used by a foreign agent.
* Implement Risk-Based Vetting for Students: Instead of treating all students as a uniform risk, focus enhanced screening and monitoring on the small subset of individuals in highly sensitive research fields or those with funding from foreign government entities of concern.

Give Feedback

* Enhance University Partnerships: Empower university Designated School Officials (DSOs) to act as partners in security, providing them with better resources and intelligence to identify credible, specific behavioral red flags, rather than just enforcing paperwork compliance.
These alternatives directly address security threats without dismantling the talent pipeline that is essential to our nation's long-term prosperity and innovation. I urge you to withdraw this rule in favor of a more effective and strategic approach.

**Comment ID**

ICEB-2025-0001-3518

**Tracking Number**

mf1-55sl-hmcj

**Comment Details**

**Received Date**

Sep 1, 2025

Your Voice in Federal Decision Making

About (/about) Bulk Data Download (/bulkdownload) Agencies (/agencies) Learn (/learn) Reports (/dotreports) FAQ (/faq) Commenting Guidance (/commenting-guidance)

Give Feedback

Privacy & Security Notice (/privacy-notice) | User Notice (/user-notice) |
Accessibility Statement (/accessibility) | API Requests (https://open.gsa.gov/api/regulationsgov/) |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)