**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>Defendants. | Case No. 1:26-cv-13799-FDS |

**PLAINTIFFS' PROPOSED SCHEDULE AND PROCEDURAL PLAN**

Pursuant to the Court's order at the hearing of October 2, 2026, Plaintiffs explain below the following: (1) The Court has jurisdiction to render a final judgment now; (2) the Court *should* render a final judgment now, rather than enter a stay, (3) Plaintiffs do not object to the government's production of an administrative record, (4) while the Court could enter judgment without additional briefing, Plaintiffs do not oppose supplemental briefs if they would aid the Court, and (5) Plaintiffs request a final judgment in the form of APA Section 706 "set aside" relief, which would mean vacatur of the Final Rule. Plaintiffs describe each point below.

On October 7, 2026—24 days after this Court entered its order on September 14, 2026—the government filed a motion with the First Circuit to expedite the appeal. Plaintiffs consented to the relief requested. The government proposed a schedule where the government's opening brief is due 21 days after the First Circuit grants the motion; Plaintiffs' brief is due 30 days later; the government's reply is due 10 days later; and then the case would be calendared for argument thereafter. The First Circuit resolved that motion earlier today, October 9, 2026, stating that "[w]hen this appeal is ready for briefing … the following schedule will enter: Opening

Brief/Appendix: 21 days after briefing schedule is entered on the docket; Response Brief: 30 days after service of the opening brief; Reply Brief: 10 days after service of the Response Brief." *See Order*, *Presidents' Alliance on Higher Education and Immigration v. United States Department of Homeland Security* (1st Cir., Oct. 9, 2026). As the First Circuit has not yet entered a briefing schedule, briefing will most likely conclude in mid-December or later, with oral argument to follow.

Substantial efficiencies would be realized if this Court promptly renders final judgment, allowing that judgment to be consolidated with the currently pending appeal. In this Court, the government contested not just Plaintiffs' position with respect to the merits, but also our demonstration of irreparable injury and the appropriate scope of interim relief. Granting final relief would eliminate these interim issues from consideration, allowing the parties—and the First Circuit—to focus on the merits issues alone. That approach will most promptly and efficiently bring a final conclusion to this dispute.

To that end, Plaintiffs respectfully suggest that the Court may wish to act on the fully briefed motion for summary judgment currently before it. Alternatively, if the Court believes supplemental briefs would be of assistance, the parties should promptly supply them. Plaintiffs have no objection to the government preparing an administrative record.

Plaintiffs respectfully suggest the following schedule, in the event that the Court believes supplemental briefing would be of assistance:

- **October 16, 2026:** Defendants transmit to Plaintiffs the administrative record and file with the Court an administrative record index.
- **October 23, 2026**: Plaintiffs and Defendants concurrently file supplemental memoranda of law regarding summary judgment, limited to 20 pages.
- **October 30, 2026**: Plaintiffs and Defendants concurrently file supplemental reply memoranda, limited to 10 pages.

Plaintiffs propose that the parties need not start briefing over from scratch. Rather, these intervals and page lengths would allow the parties to ventilate any issues arising from the briefs or this

Court's decision that the parties believe warrant supplementation. This would enable the Court to promptly enter final judgment as it deems fit. Any appeal of that final judgment may then be consolidated with the currently pending appeal.

**1. The Court retains jurisdiction to reach a final judgment.**

Defendants' appeal of the Court's order of interim relief under Section 705 of the Administrative Procedure Act does not divest this Court of jurisdiction to enter a final judgment.

"[A]ppeal from an interlocutory order does not divest district courts of jurisdiction to proceed with matters unrelated to the appeal." *Russomano v. Novo Nordisk Inc.*, 2020 WL 2850253, at *1 (D. Mass. June 2, 2020) (alterations incorporated) (quoting *Rigby v. Damant*, 486 F. Supp. 2d 222, 225 (D. Mass. 2007)). Accordingly, "[t]he general rule for an interlocutory appeal of a preliminary injunction is that it does not defeat the power of the trial court to proceed further with the case." *Id.* (quotation marks omitted) (quoting *Pharm. Care Mgmt. Ass'n v. Me. Att'y Gen.*, 332 F. Supp. 2d 258, 259 (D. Me. 2004)); 16 Fed. Prac. & Proc. Juris. § 3921.2 (3d ed.) (discussing the authority of a district court to "proceed toward decision of the merits" notwithstanding the pendency of a preliminary injunction appeal); *id.* n.17 (collecting authorities permitting a district court to adjudicate summary judgment motions while a preliminary injunction appeal is pending).

This is just as true where the appealed-from interlocutory order is an APA Section 705 stay, which, although not technically a preliminary injunction, is a functional equivalent. *See, e.g.*, *Pablo Sequen v. Albarran*, 835 F. Supp. 3d 1061, 1092 (N.D. Cal. 2026) (holding that the government's notice of appeal of an APA Section 705 order "does not divest the district court of jurisdiction to proceed with the action on the merits") (quoting *G & M, Inc. v. Newbern*, 488 F.2d 742, 746 (9th Cir. 1973)). The Court thus retains jurisdiction.

**2. The Court should not stay the proceedings.**

The Court should not stay proceedings in this case pending the resolution of Defendants' interlocutory appeal. "[S]tays cannot be cavalierly dispensed: there must be good cause for their

issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *California v. Trump*, 2026 WL 1826535, at *7 (D. Mass. June 24, 2026) (quoting *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992)). There is no such good cause to stay proceedings, nor do the equities favor this approach.

***First***, a stay risks material prejudice to Plaintiffs and their members. The object of Defendants' pending appeal is to dissolve the currently effective Section 705 stay. In this Court, Defendants (a) challenged whether Plaintiffs adequately demonstrated irreparable injury and (b) contested the scope of injunctive relief. Defendants have made no representation that they intend to abandon these arguments. Resolving this case on the merits would eliminate these issues, appropriately focusing ongoing litigation on the merits of the Rule. Staying this case, by contrast, could enable Defendants to challenge the relief presently in force, *without* prevailing on the merits. That opens the prospect of enormous prejudice to Plaintiffs.

The Court has already concluded that the Rule, if allowed to take effect, would cause substantial harm because, among other things, declines in international student enrollment caused by the Final Rule "will have substantial financial, educational, research, and cultural ramifications," institutions are "being forced to choose between changing … programs or being unable to offer them to international students" and "universities will endure substantial administrative burdens." Dkt. No. 50 at 43-44; *see also* Dkt. No. 13 at 35-41 (collecting additional evidence of irreparable harm). This is significant reason to resolve this case with finality on the merits.

***Second***, proceeding to final judgment risks no harm to Defendants, nor do any other equities favor a stay. Litigation costs alone cannot justify a stay. *See, e.g., Bos. Heart Diagnostics Corp. v. Health Diagnostics Lab'y, Inc.*, 2014 WL 2048436, at *3 (D. Mass. May 16, 2014) ("The mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.") (quoting *Sunbeam Products, Inc. v. Hamilton Beach Brands, Inc.*, 2010 WL 1946262, at *4 (E.D. Va. May 10, 2010)). It is unclear what other harm to Defendants could

arise from proceeding with summary judgment. Defendants voluntarily chose to lodge an interlocutory appeal rather than await final judgment. They cannot be heard to complain of the need to litigate in both forums, as that is a consequence of their own litigation strategy.

Nor, in any event, would there be any substantial benefit to party or judicial resources of staying proceedings in this case. Proceeding to summary judgment need not be taxing—the Court suggested that it would be possible to achieve a final judgment in just a few weeks (Oct. 2, 2026 transcript at 15:2), and Plaintiffs' proposed schedule reflects as much. *Supra* at 1. If the Court were to have any concern about the need to preserve party and judicial resources, the Court could also grant Plaintiffs' pending motion for summary judgment now, without additional briefing.

***Third***, if anything, proceeding toward final judgment rather than staying proceedings would very likely *conserve* resources. A prompt final judgment could narrow the issues before the First Circuit to just the merits, and it would allow the appellate court to avoid seriatim appeals. For similar reasons, the prospect of "inconsistent judgments" is exceedingly remote and certainly does not warrant a stay. *Cf.* Oct. 2, 2026 transcript at 12:18. If the Court moves expeditiously towards final judgment, the likely result would be one consolidated appeal in the First Circuit, narrowing the issues to only the merits of Plaintiffs' APA challenge.

**3. Plaintiffs do not oppose production of an administrative record, if prompt.**

As Plaintiffs explained in their prior motion, the dispute is ripe for summary judgment right now, without the need to formally compile an administrative record. *See* Dkt. No. 2 at 2; *see also, e.g.*, *Parker v. Hoglander*, 2016 WL 3527014, at *3 (D.D.C. June 23, 2016) ("A motion for summary judgment can . . . be too late, but not too early; 'at any time' does in fact mean 'at any time.'"); Fed. R. Civ. P. 56 adv. comm. note 2009 amend. ("[A] party [may] move for summary judgment at any time, even as early as the commencement of the action."); *Am. Hosp. Ass'n v. Dep't of Health & Human Servs.*, 2018 WL 5777397, at *2 (D.D.C. Nov. 2, 2018) (explaining that "early summary judgment motions are often appropriate" in cases challenging government action).

Defendants argued in the opposition that summary judgment is premature without formally filing a full administrative record (*see* Dkt. No. 46-1 at 44), but that is incorrect.[1] The APA states that "the court shall review the whole record *or those parts of it cited by a party*." 5 U.S.C. § 706 (emphasis added). Plaintiffs' merits arguments rely entirely on comment letters found in the administrative record and the Final Rule itself. "[T]hose parts of [the administrative record] cited by [Plaintiffs]" (*id.*) are more than sufficient to resolve this case. Indeed, because here the administrative record largely consists of public comments, Plaintiffs' case can only conceivably grow *stronger* with an administrative record, which would detail additional instances of Defendants disregarding substantial comments.

All of that said, Plaintiffs do not oppose Defendants' promulgation of a formal administrative record for housekeeping purposes. The Court, however, should not permit that exercise to cause undue delay. Defendants indicated that they have already begun assembling the administrative record (Oct. 2, 2026 transcript at 12:22), and, because the record consists primarily of public comments, it should be straightforward to compile. Accordingly, Plaintiffs propose that the Court order Defendants to file the administrative record within one week. *Supra* at 1.

**4. Plaintiffs do not oppose supplemental briefing.**

This case has been fully and adequately briefed, and Plaintiffs do not believe that any further briefing is necessary to resolve the issues before the Court. That said, Plaintiffs do not oppose supplemental briefing if the Court were to deem it useful. Again, the exercise of supplemental briefing should not cause delay. Should the Court order supplemental briefing, Plaintiffs propose a page limit of 20 pages for opening supplemental briefs and 10 pages for reply briefs. Rather than

[1] *Citizens to Preserve Overton Park, Inc. v. Volpe* does not suggest otherwise. *Cf.* Dkt. No. 46-1. In *Overton Park*, the lower courts had granted the *government's* motion for summary judgment, which was supported not by the administrative record but by "litigation affidavits" which were "merely 'post hoc' rationalizations." 401 U.S. 402, 419 (1971). That is quite unlike granting a *plaintiff* summary judgment based on its citations to parts of the administrative record showing that the government's decisionmaking violated the APA standard.

begin afresh, Plaintiffs suggest that the parties supplement the current filings.

**5. Scope of final relief.**

If the Court grants Plaintiffs permanent relief, the Court should order the default APA remedy: vacatur of the Final Rule. "The normal remedy for a successful APA challenge is vacatur of the rule and its applicability to all who would have been subject to it." *Massachusetts v. Nat'l Institutes of Health*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025), *aff'd*, 164 F.4th 1 (1st Cir. 2026); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall hold unlawful and set aside agency action ... found to be ... arbitrary [and] capricious."); *Harrington v. Chao*, 280 F.3d 50, 60 (1st Cir. 2002) (vacatur "is a proper remedy when an agency fails to explain its reasoning adequately."). As this Court has recognized, "vacatur acts on the agency action itself" and is thus "not generally party specific." *Massachusetts v. Dep't of Educ.*, 831 F. Supp. 3d 34, 50 (D. Mass. 2026) (Saylor, J.); *see also id.* ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.") (quoting *Corner Post, Inc. v. Bd. of Governors*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring)). This Court has further observed that the Supreme Court's decision in *CASA* does not alter this conclusion. *See id.* ("The *CASA* Court observed that 'whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action' is a 'distinct question' from the limits of equitable relief under the Judiciary Act of 1789.") (quoting *Trump v. CASA, Inc.,* 606 U.S. 831, 847 n.10 (2025)).

Additionally, unlike relief under Section 705, Plaintiffs need make no showing beyond a rule's unlawfulness under the APA to justify vacatur. To be sure, "vacatur is not the only avenue for relief" generally available to a court (*California v. U.S. Dep't of Educ.*, 2026 WL 2754968, at *31 (D. Mass. Sept. 17, 2026)), but "[w]hether to vacate the action 'rests in the sound discretion of the reviewing court'" (*id.*) (quoting *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001)). Though a court need not consider any more than a rule's unlawfulness to vacate, additional

considerations supporting vacatur can include "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Id.* (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)).

Here, these additional considerations further establish the need for vacatur above and beyond the rule's unlawfulness under the APA. The Court has been clear about the "disruptive consequences" of the Final Rule. *Supra* at 4. And it likewise thoroughly catalogued "the seriousness of the [rule's] deficiencies." *See generally* Dkt. No. 50 at 27-42; *see also id.* at 7-9 (stating that "the government's proffered rationales for the rule are exceptionally weak, and the connection between the rule and the problems it purports to address is exceptionally attenuated," "rais[ing] legitimate questions as to whether its real purpose is … to achieve other, undisclosed, goals—such as, for example, asserting greater government control over academic institutions and the press."). Further, there is no meaningful way to provide relief for Plaintiffs and the stakeholders they represent *other* than vacating the Rule in its entirety; otherwise, there would be no way to meaningfully administer the Rule.

Dated: October 9, 2026

Respectfully submitted,

/s/ *Paul W. Hughes*

Paul W. Hughes (DC Bar No. 997235)*
Emmett Witkovsky-Eldred (DC Bar No. 90012725)*
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mcdermottlaw.com
* *pro hac vice*

Dana McSherry (MA BBO #664430)
McDermott Will & Schulte LLP
200 Clarendon Street, Floor 58
Boston, MA 02116
(617) 535-4060
dmcsherry@mcdermottlaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 9, 2026, I electronically filed the foregoing via the Court's CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: October 9, 2026

/s/ *Paul W. Hughes*

Paul W. Hughes (DC Bar No. 997235)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mcdermottlaw.com