**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **PRESIDENTS' ALLIANCE ON HIGHER EDUCATION AND IMMIGRATION, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,**<br><br>**Defendants.** | **Civil Action No. 26-13799-FDS** |

**MEMORANDUM AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is a challenge to a Final Rule issued by the United States Department of Homeland Security concerning the duration of visas for certain nonimmigrants studying or working in the United States.[1] The new rule applies to international students (F visas), international researchers, professors, or instructors studying or teaching at U.S. colleges and universities (J visas), and foreign press representatives (I visas). Plaintiffs are three organizations, representing a variety of colleges, universities, and educators, and four labor organizations, one of which represents journalists and other communications workers.[2]

---

[1] *Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media*, 91 Fed. Reg. 44976 (July 17, 2026) ("Final Rule").

[2] Specifically, plaintiffs are the Presidents' Alliance on Higher Education and Immigration; NAFSA: Association of International Educators; Association of Independent Colleges and Universities in Massachusetts; American Federation of Teachers; Graduate Labor Organization, AFT Local 6516; The NewsGuild-CWA; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; and United Auto Workers Local 2322.

## I. **Background**

On September 14, 2026, the Court issued a preliminary injunction postponing the effective date of the Final Rule pursuant to the Administrative Procedure Act, 5 U.S.C. § 705. Defendants have appealed that preliminary injunction to the United States Court of Appeals for the First Circuit, which remains pending as of this writing.[3] The parties have now cross-moved for summary judgment.

In its preliminary injunction order, the Court found, in substance, that plaintiffs were likely to succeed on their claim that the Final Rule was arbitrary and capricious, in violation of the APA, because (1) DHS failed to appropriately weigh the costs and benefits of the Final Rule; (2) the proffered rationales—fraud and national security—did not support the agency action; (3) DHS failed to consider less burdensome alternatives; and (4) DHS failed to respond adequately to significant comments.

The issues raised on summary judgment by both sides are virtually identical to those raised at the preliminary injunction phase. For the sake of efficiency, rather than repeat that discussion, the Court will adopt and incorporate the analysis of that memorandum and order here. In particular, the same analysis as to the likelihood of success of plaintiffs' claims applies with equal force as to the question of whether plaintiffs or defendants are entitled to summary judgment. Furthermore, because this matter involves a challenge to a federal rule, there are no disputes as to any material fact, and no evidentiary issues to resolve. Accordingly, the Court will grant summary judgment in favor of plaintiffs, and against

[3] The parties are in agreement that the pendency of that interlocutory appeal of the preliminary injunction order does not divest this Court of subject-matter jurisdiction to address the merits. *See, e.g.*, *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989); *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982).

defendants, on the same basis that it found a likelihood of success on the merits of plaintiffs' claims at the preliminary injunction stage.

In their summary judgment briefing, plaintiffs have supplemented their contention that the Final Rule is arbitrary and capricious because DHS failed to account for tools already available under the Student and Exchange Visitor Information System ("SEVIS"). They have also asked this Court to resolve an issue that the Court had reserved at the preliminary injunction phase—specifically, that the Final Rule is contrary to law because its limitation on academic mobility contravenes 8 U.S.C. § 1101(a)(15)(F). Those issues are discussed below.

## II. Analysis

### A. Failure to Account for Existing SEVIS Tools

In their briefing, plaintiffs further emphasize that the Final Rule is arbitrary and capricious because the agency failed to consider a reasonable alternative: enhanced utilization of the existing SEVIS program. According to plaintiffs, DHS should have considered whether the comprehensive reporting and data collecting responsibilities by Designated School Officials ("DSOs") and Responsible Officers ("ROs"), coupled with strong incentives to fully comply with governing regulations, would ensure that DHS is able to address fraud and national security concerns.

The Student and Exchange Visitor Program ("SEVP"), which is a division of ICE, oversees F nonimmigrant students and the institutions in which they enroll. A school must be certified by SEVP in order to enroll international students. 8 C.F.R. § 214.3(f). In order to maintain certification, schools must comply with extensive reporting requirements, including consistently reporting and updating a student's address, record of coursework, and academic status. *Id.* § 214.3(g)(1)-(3). DHS may withdraw a school's certification at any time,

including (among other reasons) if a school fails to comply with DHS's reporting and recordkeeping requirements. *See* 8 C.F.R. § 214.4(a)(2).

A similar regulatory process governs the J visa program. Schools must be designated as an "Exchange Visitor Program sponsor" by the State Department in order to host J nonimmigrants. 22 C.F.R. § 62.6. To maintain that designation, schools must agree to provide accurate, complete, and timely information about an exchange visitor's program participation, and changes in the circumstances of the nonimmigrant. *Id.* § 62.13(b). DSOs and ROs oversee the school's reporting. DSOs certify their submissions under penalty of perjury. 8 C.F.R. § 214.3(a)(1)(ii). ROs must undergo periodic criminal background checks. 22 C.F.R. § 62.5(c)(8)(iii).

Historically, DHS has actively updated and improved the SEVIS program on a regular basis. As one commenter noted, "[i]n 2019, DHS implemented several GAO-provided recommendations to further mitigate risk within SEVIS, including implementing techniques to identify fraud in institutions seeking SEVP certification, verifying the eligibility of Designated School Officials (DSOs), and Developing a Risk Assessment model." Ex. A, Dkt. No. 69-2, at 2.

Again, historically, DHS has utilized the extensive reporting that it receives from schools to identify cases of abuse and fraud. For example, DHS has prosecuted instances of "pay-to-stay" fraud. 91 Fed. Reg. at 44983. It has reviewed SEVIS records for potential violations and referred cases to field offices for further information. *Id.* at 44983 n. 60. It has run the names of more than one million students through the National Crime Information Center. Ex. F, Dkt. No. 69-7, at 10. It has also identified students whose behavior may indicate that they are fraudulently overstaying their visas. 91 Fed. Reg. at 44983.

DHS contends that the existing SEVIS program is not a reasonable alternative because it is a "data-reporting system for schools, not an immigration-status adjudication system." Def's Mot., Dkt. No. 46-1, at 24. But DHS has not adequately explained how implementing an unreviewable, completely discretionary renewal system—after a foreign student has already been in the country for four years—meaningfully enhances the ability of DHS to root out cases of fraud, or how the benefits of such a system outweigh the immense costs of abandoning the existing system. At the very least, DHS should have carefully weighed the costs and benefits of enhancements to the SEVIS system against the immense costs and limited benefits of the Final Rule, which it failed to do. That provides further support for the finding of the Court that the Final Rule is arbitrary and capricious under the APA because DHS failed to consider less burdensome alternatives in promulgating the rule.

**B. <u>Limitation on Academic Mobility</u>**

Plaintiffs further contend that the Final Rule is contrary to law because its limitations on academic studies contravene the provisions of 8 U.S.C. § 1101(a)(15)(F). That statute provides that the F-1 program is open to "bona fide student[s] qualified to pursue a full course of study . . . who seek[] to enter the United States temporarily and solely for the purpose of pursuing such a course of study." § 1101(a)(15)(F).

In essence, DHS contends that it is within the Secretary's discretion to promulgate regulations that define an appropriate "course of study." Specifically, it contends that it can define the term "course of study" to prohibit various types of educational programs. Among other things, its views of an appropriate "course of study" would prohibit foreign students from engaging in extended periods of study, such as those required for Ph.D. programs; prohibit them from obtaining joint degrees; prohibit them from changing their academic concentration; and

prohibit them from participating in academic programs that are not at a higher academic level than any previously completed program.

In *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, the D.C. Circuit noted that under § 1101(a)(15)(F), Congress reserved for itself the power of "setting terms of entry," while delegating to the executive branch the "authority under the INA to set the 'time' and 'conditions' of nonimmigrants' stay" in such a way that is "reasonably related to the nature and purpose of the F-1 visa class." 50 F.4th 164, 168, 179 (D.C. Cir. 2022). The court determined that the Optional Practical Training program ("OPT"), promulgated by DHS, was "reasonably related" to the purpose of the F-1 visa class because it "enriche[d] and augment[ed] a student's education experience" and took into account the "complexity and typical duration of research, development, [and] testing." *Washington*, 50 F.4th 164 at 179.

Here, by limiting the academic programs that students may pursue, DHS is not setting a "time" or "condition" of stay that is "reasonably related to the nature and purpose of the F-1 visa class." The "nature and purpose" of the F-1 visa class is to permit, and indeed encourage, foreign students to pursue educational opportunities in the United States. The criteria imposed by DHS as to what it deems to be appropriate educational alternatives for foreign students are not reasonably related to that purpose. For example, a foreign student with a strong academic background who genuinely intends to pursue a joint graduate degree in electrical engineering and business is without doubt a "bona fide student" who is "qualified to pursue a full course of study." Indeed, DHS acknowledges that there are legitimate reasons why a student may pursue another academic degree at the same or lower level as the one he or she has completed—for example, pursuing an M.B.A. after a J.D. 91 Fed. Reg. at 45041. But the Final Rule would effectively prohibit such a student from entering the United States to pursue those studies. And

the purported reasons given by DHS for doing so—protecting national security and preventing fraud—are not reasonably related to the nature and purpose of the F-1 visa program.

Put bluntly, DHS is seeking to prevent or discourage the very activity—providing educational opportunities for foreign students in the United States—that Congress sought to permit and encourage. The statute simply does not grant DHS such broad and open-ended authority to undermine the F-1 visa program.

In short, the limitations on academic studies imposed by the Final Rule are not "reasonably related" to the nature or purpose of the F-1 visa program. The Final Rule is contrary to statutory authority, as well as arbitrary and capricious, and may be vacated on that basis as well. The Court will therefore grant plaintiffs' motion for summary judgment and deny defendants' motion for summary judgment on that basis as well.

**C. Vacatur under the APA**

The remaining question is that of the appropriate remedy. Plaintiffs seek vacatur under the APA. DHS contends that this Court should instead remand to the agency without vacatur.

This Court finds that the standard remedy under the APA—that is, vacating the Final Rule—is appropriate in this case. Remanding without vacatur may be appropriate in some extraordinary circumstances where "the consequences of vacating might be quite disruptive." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993). This is not such a case. The current regime has existed for decades, and the Final Rule has not gone into effect.

Thus, this Court will issue a final judgment vacating the Final Rule under the APA.

## III. <u>Conclusion</u>

For the foregoing reasons, and the reasons set forth in the Memorandum and Order on Motion for Preliminary Injunction dated September 14, 2026, plaintiffs' motion for summary judgment is GRANTED and defendants' motion for summary judgment is DENIED. The Final Rule, entitled *Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media*, 91 Fed. Reg. 44976 (July 17, 2026), is hereby VACATED pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, on the ground that it is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. The Clerk is directed to enter final judgment in favor of plaintiff.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: November 16, 2026